UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAMON WHEELER,

        Plaintiff,

    -v-

TOWN OF WALLKILL; JOSEPH C. KOLEK,

        Defendants.

No. 16-CV-7441 (KMK)

OPINION & ORDER

Appearances:

Damon Wheeler
Valhalla, NY
*Pro Se Plaintiff*

James A. Randazzo, Esq.
Gaines, Novick, Ponzini, Cossu & Venditti, LLP
White Plains, NY
*Counsel for Defendant Town of Wallkill*

Mary Kim, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant Joseph C. Kolek*

KENNETH M. KARAS, District Judge:

  Plaintiff Damon Wheeler ("Plaintiff"), currently an inmate at Westchester County Jail, brings this pro se Action against the Town of Wallkill (the "Town") and Investigator Joseph C. Kolek ("Kolek," and together with the Town, "Defendants"), alleging violations of his constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (*See* Am. Compl. (Dkt. No. 14).)[1] Before the Court is the Town's Motion To Dismiss Plaintiff's

---

[1] While Plaintiff's Amended Complaint does not explicitly reference any constitutional amendments, Plaintiff's response to the Town's Motion alleges violations of each of the aforementioned amendments. (*See generally* Pl. Resp. to Def. Town of Wallkill Mot. To Dismiss

Amended Complaint (the "Motion"). (*See* Dkt. No. 22.) For the reasons to follow, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from Plaintiff's Amended Complaint and are assumed true for the purpose of resolving the instant Motion.

On September 6, 2014, at approximately 4:15 p.m., Plaintiff "was arrested at [his] home without an arrest warrant and charged with a felony . . . by Inv[estigator] Joseph Kolek of the New York State Police." (Am. Compl. 4.) At the time of the arrest, Plaintiff was "home alone with [his] infant son." (*Id.*) Plaintiff avers that Kolek and three state troopers "rang the doorbell" and when Plaintiff identified himself, "they said they had a warrant for [his] arrest." (*Id.*)[2] When Plaintiff inquired what the warrant was for, Kolek stated that he would "tell [Plaintiff] when [they] g[o]t to the station." (*Id.* (internal quotation marks omitted).) Plaintiff asked to see the warrant and was again told he could do so at the station. (*See id.*) Plaintiff explained that he "was home alone with [his] infant son and . . . [Kolek] insisted that [Plaintiff] allow [the troopers] to wait inside [his] house until someone c[ame] to care for [his] son." (*Id.*) Kolek and the three troopers "entered . . . without [his] permission and stood guard in [Plaintiff's] livingroom as [he] sat on the couch with [his] infant son, terrified and shaking like a leaf." (*Id.*) Plaintiff contends that his "son senses [Plaintiff's] anxiety which makes [his son] uncomfortable." (*Id.*) Plaintiff then called his wife, who "rushe[d] home." (*Id.*)

Plaintiff alleges that during the time the troopers were in his home, he was "restricted to

---

Pl.'s Am. Compl. (Dkt. No. 28).)

[2] The three state troopers are not named as defendants in this Action.

the couch" and "afraid to move from [it]." (*Id.*) After approximately 30 minutes, Plaintiff's wife arrived. (*See id.*) When Plaintiff "explain[ed] the situation to her," she also asked to see the arrest warrant. (*Id.* at 4–5.) Kolek replied that the warrant was "at the station." (*Id.* at 5 (internal quotation marks omitted).) Plaintiff then requested permission from Kolek to change his clothes so that he could be "properly dressed for court," and Kolek "followed [Plaintiff] into the bedroom and watched [him] the entire time." (*Id.*) Plaintiff was then handcuffed and taken into custody "right in front of [his] family, without an arrest warrant." (*Id.*)

Plaintiff was taken to "the State Trooper Barracks on Crystal Run R[oad]," and "taken to a room and questioned by Investigator Kolek about a crime that he said took place in Middletown, N[ew] Y[ork]." (*Id.*) When Plaintiff "requested to see a lawyer," "[t]he conversation was over." (*Id.*) Plaintiff asserts that Kolek "never produced the warrant for [Plaintiff's] arrest," but Plaintiff was told he was being charged with [criminal possession of stolen property in the third degree], a felony." (*Id.*) Plaintiff was subsequently "taken to the Town of Wallkill [c]ourt and seen by a Judge who ordered that [he] be remanded pending a [g]rand [j]ury [h]earing." (*Id.*)

Plaintiff was held in Orange County Jail for six days before he was "produced at the Town of Wallkill [c]ourt for the [g]rand [j]ury [h]earing." (*Id.*) Plaintiff appeared before Judge Patrick Owen "without legal representation." (*Id.*) At the hearing, the Assistant District Attorney (the "ADA") "requested a 2nd call so she could go back to the [District Attorney's] office and ask him to reduce the charges to a misdemeanor so she could request . . . bail." (*Id.*) Plaintiff objected "because [he] was prepared to testify" before the grand jury, but Judge Owen granted the ADA's request. (*Id.*) The ADA reduced the charges against Plaintiff to criminal possession of stolen property in the fifth degree, a misdemeanor, and "requested bail be set at

3

$50,000." (*Id.*) Plaintiff objected unsuccessfully and "was taken back to Orange County Jail in l[ieu] of $50,000 . . . ." (*Id.*)

Plaintiff alleges that "time passed" and "to [his] surprise, the [s]upervisor at the Legal Aid Society submitted a motion for . . . bail reduction on [Plaintiff's] behalf." (*Id.*) Plaintiff's bail was reduced to $5,000 and his family was able to post the amount. (*See id.*) "When [Plaintiff] came to court a few months later, [he] was told that [his] case was dismissed." (*Id.*)

B.  Procedural History

On September 23, 2016, Plaintiff filed the initial Complaint in this Action naming the Town of Wallkill Police Department and a John Doe Defendant. (*See* Dkt. No. 2.)[3] In an Order issued October 17, 2016, the Court directed the Clerk of Court to substitute the Town of Wallkill for the Town of Wallkill Police Department. (*See* Am. Order & Valentin Order (Dkt. No. 7).)[4] The same Order directed the Town Attorney for the Town of Wallkill to ascertain the identity of the John Doe Defendant and the address where Defendant could be served. (*See id.* at 3.)

On October 21, 2016, Plaintiff submitted an application for the Court to appoint pro bono counsel, (*see* Dkt. No. 8), which the Court denied without prejudice on November 1, 2016, (*see* Dkt. No. 13).

Pursuant to the Court's October 17, 2016 Order, counsel for Defendant Town of Wallkill informed the Court that the John Doe Defendant Plaintiff named in the Complaint was Investigator Joseph C. Kolek of the New York State Police—Middletown Barracks. (*See* Letter from William A. Frank, Esq. to Court 2 (Dkt. No. 10).) A copy of counsel's letter was sent to an

---

[3] Plaintiff's request to proceed in forma pauperis was granted on October 11, 2016. (*See* Dkt. No. 5.)

[4] The Court's October 17, 2016 Order amended an Order issued three days earlier. (*See* Dkt. No. 6.)

address for Defendant Kolek. (*See id.*) On November 7, 2016, Plaintiff filed an Amended Complaint naming the Town of Wallkill and Kolek as Defendants. (*See* Am. Compl.) One week later, on November 15, 2016, Plaintiff filed a letter with the Court, detailing why "the Town of Wallkill should be held liable." (*See* Dkt. No. 15.)[5]

In response to a December 12, 2016 pre-motion letter from the Town, (*see* Dkt. No. 17), the Court issued a Scheduling Order related to the Town's Motion To Dismiss, (*see* Dkt. No. 19). On January 20, 2017, the Town filed its Motion To Dismiss and accompanying papers, (*see* Dkt. Nos. 22–25), and on February 13, 2017, Plaintiff filed his papers in opposition, (*see* Dkt. Nos. 26–28). The Town filed its papers in reply on February 22, 2017. (*See* Dkt. Nos. 29–30.)

On March 6, 2017, Plaintiff submitted a motion seeking leave to file an amended complaint. (*See* Dkt. No. 31.) On March 8, 2017, the Court denied the motion to amend, noting that "Plaintiff already ha[d] amended his complaint and there [wa]s a pending motion to dismiss." (Dkt. No. 32.)

In a letter dated April 17, 2017, Plaintiff requested "confirmation as to whether or not [D]efendant[] Joseph C. Kolek was ever served his Summons by the Federal Marshal[]s." (*See* Dkt. No. 33.) Plaintiff also requested an extension of time for service. (*See id.*) Pursuant to that request, the Court issued an Order of Service on April 25, 2017. (*See* Dkt. No. 34.)[6]

---

[5] Plaintiff's letter was filed on a standard amended complaint form and docketed as Plaintiff's "Second Amended Complaint." (*See* Dkt. No. 15.) However, the Court notes that despite this label, the operative complaint in this Action is the Amended Complaint. (*See* Dkt. No. 14.)

[6] Defendant Kolek was served on May 15, 2017. (*See* Dkt. No. 36.)

5

II.  Discussion

　　A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (same). This admonition "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (same). However, the liberal treatment afforded to pro se litigants does not excuse a pro se party "from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B. Analysis

In its Motion, the Town argues that because "Plaintiff has failed to sufficiently plead a municipal policy, custom or practice which caused any purported constitutional deprivations,"

7

his Amended Complaint must be dismissed. (Def. Town of Wallkill's Mot. To Dismiss Pl.'s Am. Compl. 1 (Dkt. No. 24).) The Court agrees.

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)).[7]

To the extent Plaintiff cites allegedly unconstitutional conduct by Town employees, such as Judge Owen and Kolek, the same bar on ascribing liability applies. For a plaintiff to prevail on a § 1983 claim against a municipal employer, he must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Hunter v. City of New York*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or

---

[7] Plaintiff alleges in his Amended Complaint that Kolek is employed by the New York State Police. (*See* Am. Compl. 4 ("[Plaintiff] was arrested at [his] home . . . by Inv[estigator] Joseph Kolek of the New York State Police.").) In his opposition to Defendants' Motion, Plaintiff asserts that Kolek is both "an[] Investigator for the New York State Police and an employee of the Town of Wallkill." (Pl. Resp. to Def. Town of Wallkill Mot. To Dismiss Pl.'s Am. Compl. 5 (Dkt. No. 28).) While the Court may consider "factual allegations made by a pro se party in his papers opposing the motion," *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (italics omitted), it is appropriate to do so only "to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted). Thus even could Kolek's actions be imputed to his employer, which they cannot, *see Monell*, 436 U.S. at 691, Plaintiff asserts that Kolek was employed by the New York State Police at the time of the alleged violations and the Town would not be the responsible municipality.

8

custom and the deprivation of a constitutional right."). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (internal quotation marks omitted)); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alteration and internal quotation marks omitted); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal

9

policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). However, there are two circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled.").

Plaintiff's Amended Complaint makes no mention of any policy or custom in connection with the alleged violations. (*See generally* Am. Compl.) However, in response to the Town's Motion, Plaintiff avers "that the violation of his constitutional rights resulted from a municipal policy, custom or practice that was not adhe[re]d to by one or more of its employees." (Pl. Resp. to Def. Town of Wallkill Mot. To Dismiss Pl.'s Am. Compl. ("Pl.'s Resp.") 4 (Dkt. No. 28).)

Plaintiff's allegation that Kolek, "[a]n employee of the Town of Wallkill[,] should have been properly trained in the formal policy of [e]xecuting an [a]rrest [w]arrant" fails to state a claim. (*Id.* at 5.) First, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's

10

injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Second, as noted above, Plaintiff's Amended Complaint identifies Kolek as an employee of New York State, and therefore, the Town cannot be liable for a purported failure to train him. *See Askew v. Lindsey*, No. 15-CV-7496, 2016 WL 4992641, at *4 n.2 (S.D.N.Y. Sept. 16, 2016) ("Plaintiff has not plausibly alleged that the County or the Town exercised control or authority over officers . . . employed by *the Village*, a separate municipality."); *see also Lovitch v. County of Orange*, No. 11-CV-2536, 2013 WL 3805142, at *4 n.6 (S.D.N.Y. July 19, 2013) ("[I]t is undisputed that [the police officer] was not an employee of the [c]ounty, and that the [c]ounty was not responsible for supervising or training [the police officer]."). But even if Kolek was a Town employee, Plaintiff has not alleged (nor could he) that Kolek was a policymaker. Indeed, Kolek is alleged to be the law enforcement officer who arrested Plaintiff.

Plaintiff claims that he "suffered further injuries after his false arrest at the hands of the Town of Wallkill [c]ourt," when he was "made to stand before Judge Owen . . . without a lawyer." (Pl.'s Resp. 6–7.) Plaintiff alleges that this

> is undoubtedly a (1) formal policy which is officially endorsed by the municipality, an[d] (2) the decision to allow [Plaintiff] to stand before the [c]ourt without first assigning an attorney to represent him . . . was made by Judge Owen, who is responsible for establishing municipal policies which caused this particular civil rights violation, and (3) assigning an attorney for a criminal defendant is a practice so persist[e]nt and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials.

(*Id.* at 7.) Plaintiff's conclusory statement that allowing criminal defendants to appear without representation "is undoubtedly a . . . formal policy which is officially endorsed by the

11

municipality" is insufficient to state a *Monell* claim. (*Id.*)[8] Plaintiff provides no facts in support of this statement, but rather offers a "formulaic recitation" of the law. *Twombly*, 550 U.S. at 555. *See Guerrero v. City of New York*, No. 12-CV-2916, 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("At the pleading stage, the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (internal quotation marks omitted)); *see also Lowery v. City of New York*, No. 10-CV-7284, 2014 WL 2567104, at *6 (S.D.N.Y. June 6, 2014) (dismissing a pro se plaintiff's *Monell* claim for failing to allege either an underlying violation or sufficient facts beyond "boilerplate, conclusory allegations"); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency) (citing *Iqbal*, 556 U.S. at 678–79), *aff'd*, 480 F. App'x 627 (2d Cir. 2012). "Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." *Moore v. City of New York*, No. 08-CV-8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) (internal quotation marks omitted).

Plaintiff's allegation that Judge Owen "is responsible for establishing municipal policies which caused this particular civil rights violation," (Pl.'s Resp. 7), also does not "nudge[] [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. A municipality

---

[8] Plaintiff's claim that the assignment of attorneys to criminal defendants "is a practice so persist[e]nt and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials," alternatively seems to suggest that the Town *failed* to follow a widespread practice that otherwise would have prevented the alleged constitutional violation. (Pl.'s Resp. 7.) Plaintiff cites no other instances in which criminal defendants were denied representation. Therefore, this "single incident by itself is . . . insufficient to establish the affirmative link between [an alleged] municipal policy or custom and the alleged unconstitutional violation." *Brogdon*, 200 F. Supp. 2d at 427.

12

may be subject to § 1983 liability for acts of its officials "who have final policymaking authority" in the area in which the action was taken. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal quotation marks omitted). "[W]hether a particular official has final policymaking authority is a question of state law." *Id.* (internal quotation marks and italics omitted). "The Second Circuit has not addressed the policymaking authority of judges; however, other circuits have determined that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a [§] 1983 claim based solely on the actions of its judges." *Bliven v. Hunt*, 478 F. Supp. 2d 332, 337 & n.2 (E.D.N.Y. 2007) (citing cases from the Fifth, Seventh, Eighth, Ninth, and Tenth Circuits), *aff'd*, 579 F.3d 204 (2d Cir. 2009); *see also Rodriguez v. City of New York*, No. 02-CV-8203, 2004 WL 444089, at *4 (S.D.N.Y. Mar. 10, 2004) (finding that the holding of other circuits "that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a [§] 1983 claim based solely on the actions of its judges . . . is sound and persuasive"). "In addition, multiple district courts have determined that under New York law, village and similar judges are not considered policymakers for the purposes of evaluating a *Monell* claim." *Berry v. Village of Millbrook*, 815 F. Supp. 2d 711, 719 (S.D.N.Y. 2011); *see also Szymaszek v. Mahar*, No. 06-CV-719, 2008 WL 4518613, at *8 (N.D.N.Y. Sept. 29, 2008) (holding that the city defendant "cannot be liable through any actions or inactions" by its former city court judge); *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 218 (S.D.N.Y. 2005) (noting that "a municipality is not liable, vicariously, for an official act of one of its judges"); *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 536 (N.D.N.Y. 1997) (holding that a town judge is not a policymaker because "the jurisdiction of his court as well as the requirements of his job are prescribed by state law" and "his decisions are not final because they are appealable to higher courts within the state court

system" and, "[t]herefore, . . . the [t]own is not responsible for [the] Judge['s] conduct when he acts in his judicial capacity"). Moreover, municipal judges are typically State employees, over whom the municipality does not have control. *See Rodriguez*, 2004 WL 444089, at *4 (concluding that because a municipal judge is an employee of the State and not the municipality, "even if the judge's actions had amounted to that of a policymaker, the [municipality] would not be liable under *Monell* "); *Estes-El*, 954 F. Supp. at 536 (holding that "the Town is not responsible for [the] Judge['s] conduct when he acts in his judicial capacity, as he did in the present case"). Thus, based on the foregoing, the Court holds that Judge Owen is not a policymaker for the purpose of establishing municipal liability pursuant to *Monell*.

Furthermore, while Plaintiff does not name Judge Owen as a defendant in this lawsuit, to the extent Plaintiff claims Judge Owen's actions were unconstitutional, judicial immunity would bar Judge Owen from being held liable. *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam) (explaining "that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions," which "acts as a complete shield to claims for money damages"). Plaintiff's allegations implicating Judge Owen stem solely from actions taken while he presided over Plaintiff's prosecution in the Town of Wallkill court, (*see* Am. Compl. 5 (alleging that Judge Owen "ordered that [Plaintiff] be remanded pending a [g]rand [j]ury [h]earing"); *id.* (alleging that "[t]he Judge granted [the ADA's] request[s]")), which clearly fall within his judicial capacity, *see Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature."); *Karris v. Varulo*, No. 14-CV-1077, 2014 WL 1414483, at *3 (E.D.N.Y. Apr. 10, 2014) (holding that judicial immunity applies to claims "relating to actions taken in [the judge's] judicial capacity during [the] plaintiff's underlying

14

criminal prosecution"). Accordingly, Plaintiff's claims against the Town are dismissed.

### III. Conclusion

For the foregoing reasons, the Court grants the Town's Motion To Dismiss. In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, his claims are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. The failure to do so may result in the dismissal of Plaintiff's claims against the Town with prejudice. If Plaintiff files no Amended Complaint, the Court will assume Plaintiff intends only to proceed with the claims against Defendant Kolek.

The Clerk of Court is respectfully requested to terminate the pending Motions. (*See* Dkt. Nos. 22, 26.)

SO ORDERED.

Dated: July 13, 2017
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE