UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAMON WHEELER,

                             Plaintiff,

                              v.

SUSAN BUCKLEY, *et al.*,

                             Defendants.

No. 16-CV-7441 (KMK)

OPINION & ORDER

Appearances:

Damon Wheeler
Loretto, PA
*Pro Se Plaintiff*

Mary Kim, Esq.
Steven N. Schulman, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Damon Wheeler ("Plaintiff"), currently an inmate at Federal Correctional Institute Loretto, brings this pro se Action, pursuant to 42 U.S.C. § 1983, against current and former New York State Police Investigators Susan Buckley ("Buckley"), Conan Duelk ("Duelk"), Matthew O'Connell ("O'Connell"), Joseph C. Kolek ("Kolek"), and Patrick Beyea ("Beyea"), alleging violations of his constitutional rights in connection with a September 2014 arrest. (*See* Fourth Am. Compl. ("4AC") (Dkt. No. 86).) Before the Court is a Motion To Dismiss (the "Motion") filed by Buckley, Duelk, O'Connell, and Beyea (collectively, "Moving Defendants"). (*See* Not.

of Mot. (Dkt. No. 97).)[1]  For the reasons that follow, the Motion is granted.

I.  Background

A.  Factual History

The following facts are drawn from the Second and Fourth Amended Complaints and are accepted as true for purposes of resolving the instant Motion.[2]

On September 6, 2014, Defendants Kolek, Buckley, Duelk, and O'Connell "rang the doorbell" of Plaintiff's residence in Middletown, New York.  (4AC 3.)[3]  When Plaintiff answered the door, "Kolek claimed to have a warrant for his arrest."  (*Id.*)  Plaintiff "asked to see the arrest warrant," but Kolek replied, "'I don't have it with me.  You'll see it when we get to the station.'"  (*Id.*)  Defendants then entered Plaintiff's residence "without his consent and without an arrest warrant."  (*Id.*)  While Plaintiff got "properly dressed," Defendants "shadowed [him] from the living room to the bedroom and back to the living room, where he was handcuffed and placed under arrest."  (*Id.*)  Plaintiff was taken to the police barracks and charged with criminal possession of stolen property in the third degree.  (*Id*. at 3–4.)  Plaintiff was also "strip searched"

---

[1] Kolek has filed an Answer, (Dkt. No. 87), and has not joined the instant Motion.

[2] Plaintiff has filed numerous pleadings in this case.  *See infra* Part I.B (describing procedural history).  In the initial, First Amended, and Second Amended Complaints, Plaintiff made allegations both as to his arrest and as to the ensuing criminal proceedings.  The Court thereafter granted Plaintiff leave to file the Third Amended Complaint in order to name individuals who had previously been named as John Does.  (Dkt. No. 72.)  Plaintiff's Third and Fourth Amended Complaints named those individuals but contained substantive allegations relating only to the arrest.  However, Plaintiff has not demonstrated any intent to abandon his post-arrest allegations; to the contrary, Plaintiff continues to refer to the Second Amended Complaint and to argue the merits of his malicious prosecution claim based on the post-arrest allegations.  (*See* Pl.'s Reply to Defs.' Mem. ("Pl.'s Mem.") 4 (Dkt. No. 103).)  Accordingly, the Court considers the allegations raised in the Second Amended Complaint in addition to those raised in the Fourth Amended Complaint.

[3] Plaintiff's filings do not use consistent page numbering.  For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of each page.

by Kolek "without probable cause" and "without a search warrant or an arrest warrant." (*Id.*; *see also* SAC 3.) At all times, Defendants were supervised by Beyea, who authorized the arrest and strip search. (4AC 5, 7.)

On September 6, 2014, Plaintiff was arraigned in the Town of Wallkill Court and ordered held without bail for six days. (SAC 4.) On September 11, 2014, bail was set at $50,000. (*Id.*) Plaintiff's bail was later reduced to $5,000, which was posted. (*Id.*)

Charges against Plaintiff were thereafter dismissed "due to lack of evidence." (4AC 4.)

B. Procedural History

The initial Complaint was filed on September 12, 2016. (Compl. (Dkt. No. 2).)[4] It named as defendants the Town of Wallkill Police Department ("TWPD") and a single John Doe. (*Id.*) Plaintiff's request to proceed in forma pauperis was granted on October 11, 2016. (Dkt. No. 5.) On October 17, 2016, the Court issued an Order replacing TWPD with the Town of Wallkill ("Wallkill") and directing Wallkill to ascertain the identity of the John Doe. (Dkt. No. 7.) On October 31, 2016, Wallkill identified the John Doe as Kolek. (Dkt. No. 10.)

Plaintiff filed the First Amended Complaint on November 1, 2016, in which he named Kolek. (First Am. Compl. ("FAC") (Dkt. No. 14).)[5] On November 15, 2016, Plaintiff filed a

---

[4] Under the prison mailbox rule, an inmate's court filing is deemed filed on the day it is handed to prison officials for mailing. *See Allen v. N.Y.C. Dep't of Corr.*, No. 06-CV-7205, 2010 WL 1644943, at *7 (S.D.N.Y. Mar. 17, 2010) (citing *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993)), *adopted by* 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010). "[A]bsent evidence to the contrary, the Court assumes that [Plaintiff] gave [his filings] to prison officials for mailing on the date he signed [them]." *Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) (citation, quotation marks, and original alterations omitted).

[5] The First Amended Complaint additionally named the State of New York as a Defendant. However, no other pleading names the State as a Defendant, nor was any summons issued as to the State.

3

letter further detailing why Wallkill "should be held liable." (Dkt. No. 15.)[6] Wallkill thereafter moved to dismiss the First Amended Complaint, and on July 13, 2017, the Court issued an Opinion & Order (the "Opinion") granting Wallkill's motion. (Opinion (Dkt. No. 42).) Kolek filed an Answer to the First Amended Complaint on August 8, 2017. (Dkt. No. 44.)[7]

On July 11, 2017, Plaintiff requested leave to file a Second Amended Complaint, which he attached to the application. (Dkt. No. 43.) The Court granted leave and directed it be filed by August 31, 2017. (Dkt. No. 48.) Plaintiff did not thereafter file; rather, on September 19, 2017, upon Kolek's application, the Court directed the filing of the pleading. (Dkt. No. 55.) The Second Amended Complaint, dated August 1, 2017, was thus filed on September 19, 2017, and named as Defendants, for the first time, "New York State Police Officers John Doe 1–3" and "Supervisors Jane Doe and Richard Roe." (Second Am. Compl. ("SAC") (Dkt. No. 56).)

On May 1, 2018, the Court held a status conference at which Plaintiff requested, for the first time, assistance in identifying the John Does named in the Second Amended Complaint. (Dkt. (minute entry for May 1, 2018).) The Court directed the New York Attorney General's Office to provide that identifying information. (*Id.*) On May 15, 2018, Buckley, Duelk, and O'Connell were identified as Defendants. (Dkt. No. 70.)

On June 13, 2018, Plaintiff filed the Third Amended Complaint naming Kolek, Buckley, Duelk, and O'Connell as Defendants. (Third Am. Compl. ("TAC") (Dkt. No. 74).) Following

---

[6] Plaintiff's letter was filed on a standard amended complaint form and erroneously docketed as a "Second Amended Complaint." (Dkt. No. 15.)

[7] Kolek has filed Answers to each of Plaintiff's pleadings. (*See* Dkt. Nos. 44, 57, 76, 87.)

4

initial disclosures, Plaintiff filed the instant Fourth Amended Complaint on August 25, 2018, additionally naming Beyea as a Defendant. (4AC.)[8]

Defendants filed the instant Motion To Dismiss and accompanying papers on December 5, 2018. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 99); Decl. of Steven N. Schulman, Esq. in Supp. of Mot. ("Defs.' Decl.") (Dkt. No. 100).) Plaintiff filed a response in opposition on December 26, 2018. (Pl.'s Mem.) Defendants filed a reply on January 25, 2019. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 107).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

---

[8] The Fourth Amended Complaint is erroneously titled the "Third Amended Complaint" on both the document and the docket sheet.

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601,

605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted))).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [the plaintiff] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B. Analysis

Construed liberally, Plaintiff brings claims of false arrest/false imprisonment, unlawful search, and malicious prosecution. (4AC 4–6.) Defendants move to dismiss on grounds that Plaintiff's false arrest/false imprisonment and unlawful search claims are time-barred and that Plaintiff's malicious prosecution claim fails on the merits. (Defs.' Mem. 7.) The Court addresses each argument separately to the extent necessary.

1. Timeliness

"The statute of limitation for claims brought under 42 U.S.C. § 1983 is generally the statute of limitations for the analogous claim under the law of the state where the cause of action accrued." *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018) (citation and quotation marks omitted). Here, New York's three-year statute of limitations for personal injury actions applies. *Id.* (citing, inter alia, N.Y. C.P.L.R. § 214(5)). However, while the length of limitations period is determined by reference to state law, "the time at which a claim . . . accrues is 'a question of federal law.'" *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Under federal law, a claim begins accruing when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations and quotation marks omitted); *see also Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (same). Put differently, a claim begins accruing when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (citation and quotation marks omitted).

Plaintiff alleges that, on September 6, 2014, he was arrested without a warrant or probable cause and thereafter placed in custody. (4AC 3.) A claim of false arrest and false imprisonment accrues "when the alleged false imprisonment ends" and "the victim becomes held pursuant to [legal] process," including upon arraignment. *Wallace*, 549 U.S. at 389 (citation, quotation marks, and emphasis omitted); *see also Rivera v. City of New York*, No. 16-CV-9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (same). Plaintiff alleges that he was arraigned on September 6, 2014, the same date as his arrest. (SAC 4.) Accordingly, the statute of limitations for his false arrest and false imprisonment claims began to run on that day and expired on September 6, 2017. *See Chris H. v. New York*, No. 16-CV-6807, 2017 WL 2880848,

at *5 (S.D.N.Y. July 5, 2017) (dismissing false arrest and false imprisonment claims as untimely where the claims accrued on the date plaintiff was arraigned), *appeal dismissed*, 714 F. App'x 83 (2d Cir. 2018), *and aff'd*, 2019 WL 1410683 (2d Cir. Mar. 28, 2019).

Plaintiff also alleges that, during his arrest on September 6, 2014, Defendants unlawfully searched his residence without probable cause and that, immediately following his arrest, Defendants unlawfully strip-searched him at the police barracks. (4AC 3–4.) A claim of an unlawful search accrues at the time of the search. *See Rivera*, 2019 WL 252019, at *4 (collecting cases); *see also Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (using as relevant accrual date the date of "the alleged illegal search"); *Wheeler v. Slanovec*, No. 16-CV-9065, 2018 WL 2768651, at *6 (S.D.N.Y. June 8, 2018) (collecting cases for the proposition that a "claim relating to the illegal search of [the plaintiff's] home accrued on the date of the search itself"). Thus, the statute of limitations for the unlawful search claims began to run on September 6, 2014, and expired three years later, on September 6, 2017.

Plaintiff initiated this Action on September 12, 2016, within the limitations period, when he filed the initial Complaint. (Compl. 7.)[9] However, the initial Complaint named as Defendants, as relevant here, only a single John Doe. (*Id.* at 1.) Once Kolek was identified as that John Doe, Plaintiff filed a First Amended Complaint naming Kolek; the First Amended Complaint did not name any other John Does. (FAC 1.) Plaintiff thereafter named as Defendants (separate from and in addition to Kolek) "John Doe N.Y.S. Police Officers 1–3, Jane Doe, [and] Richard Roe" when he filed the Second Amended Complaint on August 1, 2017, also within the limitations period. (SAC 1, 7.) Yet, critically, Plaintiff did not name any of the Moving Defendants until he filed the Third Amended Complaint on June 4, 2018 — outside the

---

[9] *See* supra n.4 (describing prison mailbox rule).

9

limitations period — when he named Buckley, Duelk, and O'Connell.  (TAC 1, 12.)  And Plaintiff did not name the final Moving Defendant, Beyea, until he filed the Fourth Amended Complaint on August 25, 2018.  (4AC 1, 10.)

"A plaintiff generally cannot use John Doe pleadings 'to circumvent statutes of limitations because[] replacing a John Doe with a named party in effect constitutes a change in the party sued.'"  *Smith v. New York*, No. 17-CV-6344, 2019 WL 1208384, at *2 (W.D.N.Y. Mar. 14, 2019) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)).  "Thus, John Doe substitutions may only be accomplished when the specifications of Federal Rule of Civil Procedure 15(c) are met, which governs the relation back of amendments."  *Id.* (citing *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013)).  Because the Moving Defendants were first named in the untimely Third and Fourth Amended Complaints, Plaintiff's false arrest/false imprisonment and unlawful search claims against them are time-barred, unless the Third and Fourth Amended Complaints relate back to the timely Second Amended Complaint — the first Complaint to name those Defendants as John Does — pursuant to Rule 15(c).

### a.  Rule 15(c)(1)(C)

"Rule 15(c)(1)(C) provides the federal standard for relation back."  *Hogan*, 738 F.3d at 517.  Under that rule, an amended complaint adding a new party relates back to the original complaint only if (in addition to other requirements not in dispute here) the added party "knew or should have known that the action would have been brought against it, *but for a mistake* concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added).  "[The Second] Circuit has interpreted the rule to preclude relation back . . . where the newly added defendants were not named originally because the plaintiff did not know their identities."  *Hogan*, 738 F.3d at 517 (citation omitted); *see also Barrow v. Wethersfield Police Dep't*, 66 F.3d

10

466, 470 (2d Cir. 1995) (same). Here, it is clear that, in filing the Second Amended Complaint and naming "John Doe N.Y.S. Police Officers 1–3, Jane Doe, [and] Richard Roe" as Defendants, Plaintiff did not make a "mistake" as to the proper parties' identities, but, rather, did not know Moving Defendants' identities. Accordingly, Plaintiff's Third and Fourth Amended Complaints do not relate back to the Second Amended Complaint under Rule 15(c)(1)(C). *See Smith*, 2019 WL 1208384, at *3 ("[The plaintiff] was not mistaken about [the defendant's] identity — he intended to sue the police officer who arrested him on September 23, 2014. Rather, he simply did not know [the defendant's] name when he filed this case. Thus, [the plaintiff's] failure to name [the defendant] . . . in the Complaint was not a mistake under Rule 15(c)(1)(C)(ii), and adding [the defendant] to this case . . . does not relate back . . . ." (citation omitted)); *Boggs v. Town of Riverhead*, No. 17-CV-5411, 2018 WL 5830824, at *5 (E.D.N.Y. Nov. 7, 2018) ("[T]he law of this Circuit is that 'Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'" (quoting *Barrow*, 66 F.3d at 470)); *see also Scott v. Village of Spring Valley*, 577 F. App'x 81, 82 (2d Cir. 2014) (affirming district court's conclusion that relation back was impermissible under Rule 15(c)(1)(C) where the proposed amended complaint did "not correct a mistake of fact" but named defendants previously identified as John Does); *cf. Ceara v. Deacon*, 916 F.3d 208, 213–14 (2d Cir. 2019) (applying *Barrow* to hold that the plaintiff made a mistake as to the proper party's identity, for purposes of Rule 15(c)(1)(C), where, inter alia, he misspelled the defendant's name in the case caption).

### b. Rule 15(c)(1)(A)

"Rule 15(c)(1)(A) permits an amended pleading to relate back when the law that provides the applicable statute of limitations allows relation back." *Hogan*, 738 F.3d at 518 (quotation

11

marks omitted). As explained above, New York law provides the applicable statute of limitations here. Thus, under New York law,

> [a] party who is ignorant . . . of the name or identity of a person . . . may proceed against such person as an unknown party by designating so much of his name and identity as known. If the name or remainder of the name becomes known all . . . prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. "To take advantage of § 1024, a party must meet two requirements." *Hogan*, 738 F.3d at 519 (citations omitted). "First, the party must 'exercise due diligence, *prior* to the running of the statute of limitations, to identify the defendant by name.'" *Id.* (emphasis added) (citations omitted). This means the plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired," *Strada v. City of New York*, No. 11-CV-5735, 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) (citation omitted), and that he or she took "concrete and timely steps to ascertain" the defendant's identity, *Smith*, 2019 WL 1208384, at *4 (quoting *Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017)). "Second, the party must describe the John Doe party 'in such form as will fairly apprise the party that he is the intended defendant." *Hogan*, 738 F.3d at 519 (citations and alterations omitted).

Plaintiff fails to satisfy the first requirement. The Second Amended Complaint — the first pleading in which Plaintiff named the John Does later identified as Moving Defendants — was filed (at the earliest) on August 1, 2017, (*see* SAC 7 (noting date of signing)), eleven months after initiating suit and five weeks prior to the September 6, 2017expiration of the statute of limitations.[10] The record does not demonstrate that Plaintiff made any effort, either before or

---

[10] As described *supra* Part I.B, Plaintiff requested leave to file the Second Amended Complaint on July 11, 2017, (Dkt. No. 43), and the Court directed Plaintiff to so file by August 31, 2017, (Dkt. No. 48). When Plaintiff failed to do so, the Court directed its filing on September 19, 2017. (Dkt. No. 55.) There is thus a colorable argument, (*see* Defs.' Mem. 10),

after the filing of the Second Amended Complaint, to ascertain Moving Defendants' true identities prior to the expiration of the statute of limitations. Rather, as Defendants note, "Plaintiff waited until the initial conference on May 1, 2018" — some eight months after the statute of limitations expired — "to request the Court's assistance in identifying the John Does." (Defs.' Mem. 10–11.) Moreover, at that conference, Plaintiff requested assistance only "with respect to the officers accompanying Lt. Kolek on the arrest," and did not request assistance as to "the supervisory defendant 'Richard Roe.'" (*Id.* at 11.)

In response, Plaintiff argues that he exercised due diligence "by clearly defining the actions of the John and Jane Doe and Richard Roe defendants in the Second Amended Complaint in the hopes that the Court would order [counsel for Defendants] to disclose the names of the officers." (Pl.'s Mem. 5.) This argument is meritless. Plaintiff cites to no case, and this Court has found none, indicating that a plaintiff's filing of a John Doe complaint and thereafter hoping for judicial assistance is sufficient to demonstrate due diligence for purposes of § 1024. To the contrary, courts have consistently required that plaintiffs, including pro se plaintiffs, *themselves* take action to identify John Doe defendants. *See, e.g.*, *Hogan*, 738 F.3d at 519 (applying due diligence requirement to pro se plaintiff); *Medina v. Seiling*, No. 14-CV-6034, 2018 WL 1603857, at *7 (S.D.N.Y. Mar. 29, 2018) (same); *Berman v. Perez*, No. 17-CV-2757, 2018 WL 565269, at *3 (S.D.N.Y. Jan. 24, 2018) (same).

Plaintiff also argues that he exercised due diligence by "filing a motion for appointment of counsel" and, after the Court denied that motion, by "soliciting legal representation by sending out numerous letters to various law firms." (Pl.'s Mem. 8.) As an initial matter, nowhere in

---

that Plaintiff's Second Amended Complaint was itself filed *after* the statute of limitations expired on September 6, 2017.

Plaintiff's October 17, 2016 request for counsel, (*see* Dkt. No. 8), did he state that he sought counsel to help him identify unknown defendants; indeed, Plaintiff could not have stated as much, given that he did not file the Second Amended Complaint naming the John Does until September 19, 2017, eleven months after requesting counsel. More fundamentally, Plaintiff cites to no case, and this Court has found none, indicating that seeking counsel alone, or otherwise taking what may be termed indirect action to identify a John Doe defendant, qualifies as demonstrating due diligence for purposes of § 1024.

In sum, notwithstanding the fact that Plaintiff knew as early as September 6, 2014 — the date of the alleged false arrest and unlawful searches — that multiple police officers were involved, Plaintiff took no concrete steps prior to the expiration of the statute of limitations three years later — such as promptly filing a complaint naming multiple John Does and thereafter making formal or informal requests for information — to identify Moving Defendants. *See Sherman v. Thomas-Brown*, No. 14-CV-6912, 2018 WL 1247377, at *5 (E.D.N.Y. Mar. 9, 2018) (noting that "[t]he fact that a party waited until the 'eleventh hour' to file [the relevant John Doe complaint] may weigh against their claim of due diligence" (citation omitted)); *Berman*, 2018 WL 565269, at *3 (finding no due diligence where the pro se plaintiff failed to take "any [timely] action beyond filing his original complaint"); *Galberth v. Washington*, No. 14-CV-691, 2016 WL 1255738, at *10 (S.D.N.Y. Mar. 29, 2016) (finding no due diligence where the pro se plaintiff did not take steps to identify the defendants and "waited more than two and one-half years after the alleged misconduct to file his [c]omplaint"), *aff'd*, 743 F. App'x 479 (2d Cir. 2018); *Gonzalez v. City of New York*, No. 14-CV-7721, 2015 WL 6873451, at *3 (S.D.N.Y. Nov. 9, 2015) (finding no due diligence where "nothing in the record indicates that [the plaintiff] exercised due diligence before the statute of limitations expired" (citations omitted)); *Williams v.*

*United States*, No. 07-CV-3018, 2010 WL 963474, at *13 (S.D.N.Y. Feb. 25, 2010) (finding no due diligence where the pro se plaintiff "appears to have expended no efforts at all to identify the [defendants]"), *adopted by* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010); *cf. Hogan*, 738 F.3d at 519 (finding due diligence where the pro se plaintiff submitted "multiple discovery requests" to the Attorney General's office); *Abreu v. City of New York*, No. 17-CV-6179, 2018 WL 3315572, at *6 (S.D.N.Y. July 5, 2018) (finding due diligence where the plaintiff promptly filed the initial complaint, inquired about the officers' identities at the police station, and hired a private investigator); *Medina*, 2018 WL 1603857, at *7 (finding due diligence where the pro se plaintiff made regular, unanswered inquiries to various government agencies); *Dancy v. City of New York*, No. 15-CV-432, 2016 WL 6441554, at *6 (E.D.N.Y. Oct. 28, 2016) (finding due diligence where the plaintiff made "some effort to . . . identify [the defendants] prior to the running of the statute of limitations" (emphasis omitted)). Therefore, the Court concludes that Plaintiff has failed to demonstrate that he exhibited due diligence in attempting to timely identify Moving Defendants. Accordingly, the Third and Fourth Amended Complaints do not relate back to the Second Amended Complaint under Rule 15(c)(1)(A).

### c. Equitable Tolling

As a final argument, Plaintiff maintains that the statute of limitations should be equitably tolled. (Pl.'s Mem. 6.) "Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order to prevent inequity." *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation and quotation marks omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (quoting *Pace*

*v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Here, as described above, Plaintiff did not diligently seek to identify Moving Defendants prior to the expiration of the statute of limitations on September 6, 2017. Nor did Plaintiff diligently seek to identify Moving Defendants following expiration of the statute of limitations until the Court's May 1, 2018 conference, at which he requested assistance (as to some of the Moving Defendants). (Dkt. (minute entry for May 1, 2018).) *See also Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 134 (2d Cir. 2000) (noting that "equitable tolling requires a party to pass with reasonable diligence *through the period it seeks to have tolled*" (emphasis added) (citation, quotation marks, and alteration omitted)). Moreover, the record does not indicate — and Plaintiff does not argue[11] — that any "extraordinary circumstances" were present, let alone any that "prevented" him from timely naming (or seeking to name) Moving Defendants. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005); *see also Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline."). Accordingly, the Court concludes that equitable tolling is inappropriate. *See Rivera*, 2019 WL 252019, at \*5 (collecting cases in which courts, considering pro se pleadings, have found equitable tolling inappropriate where no extraordinary circumstances are present); *Davis v. Jackson*, No. 15-CV-5359, 2018 WL 358089, at \*7 (S.D.N.Y. Jan. 8, 2018) (declining to equitably toll statute of limitations where there was "no allegation that any [d]efendant took any action that prevented [the plaintiff]" from acting).

---

[11] The Court notes that Plaintiff, in a separate case before this Court, raised an (ultimately unsuccessful) equitable tolling argument. *See Wheeler*, 2018 WL 2768651, at \*6 ("[Plaintiff] is arguing that [equitable tolling should apply because] Defendants fraudulently concealed the forged search warrant, which prevented him from acquiring sufficient awareness of his potential claim to timely file this lawsuit.").

16

In sum, the Court concludes that Plaintiff's false arrest/false imprisonment and unlawful search claims against Moving Defendants claims are time-barred, and that there is no basis to equitably toll the statute of limitations.

### 2. Malicious Prosecution Claim

Defendants do not move to dismiss Plaintiff's malicious prosecution claim on timeliness grounds; rather, Defendants argue on the merits that Plaintiff fails to state a claim. (Defs.' Mem. 12.)

The elements of a malicious prosecution claim "are governed by state law." *Spak*, 857 F.3d at 461. "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations and quotation marks omitted); *see also Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (same).

As Defendants argue, (Defs.' Mem. 12), Plaintiff cannot demonstrate the second element, that is, that criminal proceedings were terminated in Plaintiff's favor. Plaintiff's criminal prosecution was dismissed on July 14, 2016 based on an adjournment in contemplation of dismissal ("ACD"), pursuant to N.Y. C.P.L.R. § 170.55, that had been entered into on January 14, 2016. (*See* Pl.'s Mem. 7; Defs.' Decl. Exs. A, B.) *See also Hollender v. Trump Vill. Cooperative Inc.*, 448 N.E. 2d 432, 434 (N.Y. 1983) (describing ACDs). It is well-established that, under New York law, ACDs do not constitute favorable terminations for purposes of a malicious prosecution claim. *See Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980) (affirming district court's conclusion that an ACD "did not constitute a termination in

favor of appellant" (citations omitted)); *see also Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997) (noting that ACDs "are deemed not to be favorable to the accused for purposes of a malicious prosecution claim" (citation omitted)); *Riccio v. New York*, 859 F. Supp. 2d 480, 487 (E.D.N.Y. 2012) (same); *Eke v. City of New York*, 984 N.Y.S.2d 6, 6 (App. Div. 2014) (holding that "acceptance of an ACD precludes a claim for malicious prosecution") (citations omitted).

In response, Plaintiff argues that, because he "did not appear at the Town of Wallkill courthouse any time after he posted bail on September 24, 2014," and because he was not "notified of any court dates by the [L]egal [A]id [S]ociety," he did not "agree" to the ACD disposition. (Pl.'s Mem. 7.) As an initial matter, however, Plaintiff does not allege that that the ACD was in fact entered into against his wishes; he merely alleges that he was not made aware of court dates. Yet, under New York law, "[n]o motion procedure or hearing is required and no reasons need be stated for an ACD." N.Y. Crim. Proc. Law § 170.55. Further, even construing Plaintiff's argument to be that counsel agreed to an ACD without his consent, it is Plaintiff who bears the burden of proving favorable termination, and this argument does not demonstrate as much.

Finally, Plaintiff argues that "the case against [him] was dismissed due to 'no evidence.'" (Pl.'s Mem. 8 (citing Defs.' Decl. Ex. B).) Plaintiff here refers to the fact that, on one copy of the typewritten ACD report (generated July 19, 2016), the handwritten phrase "no evidence" appears alongside other handwritten notes. (*See* Defs.' Decl. Ex. B.)[12] Defendants argue that this "cryptic notation . . . does not alter the ACD disposition or its legal effect." (Defs.' Reply

---

[12] Those other handwritten notes are: "BCI case"; "F221"; "# 628274"; "14-5761882"; and "14023374." (*See* Defs.' Decl. Ex. B.)
No handwritten notes appear on the other copy of the typewritten ACD report (generated November 29, 2018) submitted by Moving Defendants. (*See* Defs.' Decl. Ex. A.)

8.) Defendants are correct. "[I]t is only when the *final disposition* is such as to indicate innocence that this burden [of favorable termination] is met." *Hollender*, 448 N.E.2d at 435 (emphasis added) (quotation marks and alterations omitted). Thus, the handwriting on the final disposition report — whoever it was written by and whatever it indicates — cannot convert the ACD itself into a favorable termination for purposes of a malicious prosecution claim.

In sum, Plaintiff cannot satisfy the second element required to make out a malicious prosecution claim. Accordingly, his malicious prosecution claim is dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Plaintiff's malicious prosecution claim is dismissed with prejudice as to all Defendants. Plaintiff's false arrest, false imprisonment, and unlawful search claims are dismissed with prejudice as to Moving Defendants.

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 32, 37, 46), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:  May 7, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE