UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAMON WHEELER,

                        Plaintiff,

v.

JOSEPH KOLEK,

                        Defendant.
-----------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

16-cv-7441 (PMH)

PHILIP M. HALPERN, United States District Judge:

Damon Wheeler ("Plaintiff"), currently an inmate at Federal Correctional Institute Loretto, proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 against current and former New York State Police Investigators Susan Buckley, Conan Duelk, Matthew O'Connell, Joseph C. Kolek, and Patrick Beyea alleging violations of his constitutional rights in connection with a September 6, 2014 arrest. (Doc. 86, Fourth Am. Compl., "4AC"). On May 7, 2019, Judge Kenneth M. Karas, who presided over this case before it was transferred to me on April 16, 2020, dismissed Plaintiff's claims against all Defendants except Joseph C. Kolek ("Kolek" or "Defendant") who did not move for dismissal (the "May 7 Order"). (Doc. 110, "Op. & Order"). Plaintiff's remaining claims for relief against Kolek assert various violations of Plaintiff's Fourth Amendment rights and include (1) false arrest/false imprisonment, (2) malicious prosecution, (3) warrantless entry into residence, (4) warrantless search of residence, and (5) suspicionless strip search and visual body cavity inspection incident to arrest.

Before the Court is Kolek's partial motion for summary judgment filed on January 10, 2020. (Doc. 127; Doc. 129, "Def. Br."). Kolek moves for summary judgment on all claims except for Plaintiff's warrantless entry claim. (Def. Br. at 1). On April 20, 2020, Plaintiff filed opposition

to Defendant's motion for summary judgment (Doc. 137, "Pl. Opp'n") and on May 14, 2020, Defendant filed a reply (Doc. 138, "Def. Reply").

For the reasons that follow, Defendant's motion is GRANTED IN PART.

## BACKGROUND

### I. Factual History

The May 7 Order described the allegations and procedural history of this case, *see* Op. & Order at 2-5, and familiarity with it is assumed. The facts, as recited below, are taken from Defendant's Local Rule 56.1 statement (Doc. 128, "56.1 Stmt."), Plaintiff's Second Amended Complaint, (Doc. 56, "2AC"), Plaintiff's Fourth Amendment Complaint (4AC),[1] Plaintiff's opposition to Defendant's 56.1 Statement,[2] and the admissible evidence submitted by the parties.

A burglary occurred at the El Tequilero Bar and Restaurant ("El Tequilero") located in the Town of Wawaywanda on July 12, 2014 (the "July 12 Burglary"). (56.1 Stmt. ¶¶ 1, 3 (citing Doc. 130, Declaration of Joseph C. Kolek, "Kolek Decl." Ex. A, "Incident Report" at 1)).[3] On July 13, 2014, Nicolas Rendon ("Rendon"), the owner of El Tequilero, reported to police that audio equipment he had rented from Enrique Perez ("Perez") was missing. (*Id.* ¶ 3 (citing Incident Report at 24)). The missing audio equipment included two Yorkville model LS801PB speakers, valued at $1,300 each at the time of purchase, two JBL model PRX 625 speakers, valued at $1,200 each at the time of purchase, a DJ rack estimated to be $50 in value, and a DJ Workstation estimated to be

---

[1] The May 7 Order established that Plaintiff's Second Amended Complaint and Fourth Amended Complaint together constituted the operative pleading. (Op. & Order at 2 n.2).

[2] Plaintiff's opposition brief is supported by an Affidavit from Thandiwe Boyd (Pl. Opp'n at 1-4, "Boyd. Aff.") and an opposition to Defendant's Rule 56.1 statement (*id.* at 25-27, "56.1 Opp'n"). Plaintiff filed these documents in a single filing.

[3] Because the Incident Report does not use consistent page numbering, the Court refers to the Bates stamps located at the bottom of every page.

$1,000 in value. (*Id.* ¶ 5 (citing Incident Report at 23-24)). Perez estimated that he had purchased the audio equipment two years prior and that the total value of the missing property was $7,500. (*Id.* (citing Incident Report at 24, 58)).

On September 6, 2014, Kolek was assigned to investigate the July 12 Burglary. (*Id.* ¶ 1 (citing Kolek Decl. ¶ 2)). That same day, Rendon and Perez notified state troopers that they had seen some of the property they suspected was stolen during the July 12 Burglary at the World of Pawn pawnshop (the "Pawnshop"). (*Id.* ¶ 7 (citing Incident Report at 26)). When state troopers, including Kolek, arrived at the Pawnshop they met Rendon and Perez, and Perez identified a speaker and a DJ Workstation at the Pawnshop as items stolen in the July 12 Burglary. (*Id.* ¶ 8 (citing Incident Report at 32-33)). Kolek interviewed the manager of the Pawnshop, Thomas Uvenio ("Uvenio"), who informed Kolek that on August 21, 2014 a man identified by his driver's license as Damon Wheeler sold a JBL PRX speaker (the "JBL Speaker") and an Elite LS801P woofer (the "Elite Speaker") to Uvenio for $200 and $400, respectively. (*Id.* ¶ 9 (citing Incident Report at 34)). The Pawnshop's records also indicated that on July 18, 2014, the same individual, Damon Wheeler, sold three items to the Pawnshop, including a Mixed DJ Equipment Workstation (the "DJ Workstation"), for a total of $300. (*Id.* (citing Incident Report at 34)). Kolek was provided the Pawnshop's receipts and a printout of the seller's driver's license. (*Id.* (citing Kolek Decl. Ex. B)). The driver's license belonged to Plaintiff and contained Plaintiff's address. The Elite Speaker and the DJ Workstation were recovered by Kolek. (*Id.* ¶ 10 (Incident report at 26)). The JBL Speaker was not recovered as it had already been resold by the Pawnshop. (*Id.* (citing Kolek Decl. Ex. B)).

Based on the information gathered at the Pawnshop, Kolek believed there was probable cause that Plaintiff had committed criminal possession of stolen property in the third degree in

violation of § 165.50 of the New York Penal Law related to the July 12 Burglary. (*Id*. ¶ 11 (citing Kolek Decl. ¶ 13)). On September 6, 2014, Kolek and other state troopers went to Plaintiff's residence and arrested Plaintiff (the "September 6 Arrest"). (*Id*. ¶ 13 (citing Kolek Decl. ¶ 15)). Plaintiff alleges that when troopers first arrived at his home Kolek "claimed to have a warrant for [Plaintiff's] arrest," but when "Plaintiff asked to see the arrest warrant [,] Defendant Kolek stated, 'I don't have it with me. You'll see it when we get to the station.'" (4AC at 3 ¶ 1).[4] Plaintiff was home with just his young son when troopers arrived. (*Id*.) Plaintiff alleges that Kolek then entered Plaintiff's home without his permission and "waited in the living room while Plaintiff called his wife." (2AC ¶ 16). Plaintiff's wife arrived twenty to thirty minutes later and asked to see an arrest warrant. (4AC at 3 ¶¶ 2-3). Plaintiff's wife asserts that she was told by the officers that they did not have an arrest warrant on them but would "show it to [Plaintiff] when we get to the station." (Boyd Aff. ¶ 6). Kolek then "shadowed" Plaintiff to his bedroom so he could get dressed, and Plaintiff thereafter was handcuffed and placed under arrest. (4AC at 3 ¶ 4).

After the arrest, Plaintiff was brought to the Middletown State Police Barracks and placed in an interview room. (56.1 Stmt. ¶ 15 (citing Kolek Decl. ¶ 16)). Plaintiff requested counsel, refused to answer questions, and was informed that he was being charged with criminal possession of stolen property in the third degree. (*Id.* (citing Declaration of Steven N. Schulman, "Schulman Decl." Ex. C, Jan. 17, 2019 Deposition of Damon Wheeler, "Pl. Dep." at 53:5-54:14)).

Plaintiff claims that after he was told he was being charged, Kolek and two other officers conducted a strip search and visual body cavity inspection of Plaintiff during which Plaintiff was told to remove his clothes and spread his buttocks. (*Id.* ¶ 17 (citing Pl. Dep. at 56:16-58:3)). Kolek denies that a strip search or body cavity search was conducted. (*Id*. ¶ 17 n.3 (citing Kolek Decl. ¶

---

[4] Plaintiff's Fourth Amended Complaint does not use consistent paragraph numbering. Therefore, when citing to Plaintiff's Fourth Amended Complaint, the Court refers to page numbers and paragraph numbers.

19)). Plaintiff was then taken to the Town of Wallkill Court where he was arraigned and remanded without bail to the Orange County Jail. (*Id.* ¶ 19 (citing Pl. Dep. at 65:7-67:9)). On September 24, 2014, Plaintiff's bail was reduced from $50,000 to $2,500. (*Id.* ¶¶ 21-22 (citing Pl. Dep. at 34:9-35:9). Plaintiff's wife posted bail and he was released from jail after nineteen days. (*Id.* ¶ 22 (citing Pl. Dep. at 33:6-7, 35:8-9)).

On January 14, 2016, Plaintiff's case was adjourned in contemplation of dismissal on a reduced charge of criminal possession of stolen property in the fifth degree, a class A misdemeanor, in violation of § 165.40 of the New York Penal Law, which resulted in final dismissal of Plaintiff's charges on July 14, 2016. (*Id.* ¶ 23 (citing Schulman Decl. Ex. D, Ex. E)). Plaintiff asserts that the claims against him were dismissed "due to lack of evidence." (4AC at 4 ¶ 6).

## II.  Procedural History Related to Strip Search Claims

Plaintiff's initial Complaint, filed on September 23, 2016, did not name Kolek as a Defendant and did not include any allegations related to a strip search. (*See generally* Doc. 2). Plaintiff's First Amended Complaint, filed on November 7, 2016, named Kolek as a Defendant but still did not include any allegations related to a strip search. (*See generally* Doc. 14). On August 8, 2017, Defendants filed a letter informing the Court that they had received a "notice" from Plaintiff dated August 1, 2017, which contained a proposed Second Amended Complaint, and advised that they opposed Plaintiff's request to file a Second Amended Complaint. (Doc. 45). The "notice," in which Plaintiff sought the Court's permission to file a Second Amended Complaint, and which contained an appended proposed Second Amended Complaint, was filed via ECF on August 14, 2017. (Doc. 47; Doc. 47-1). By Order dated August 11, 2017 and filed via ECF on August 16, 2017, the Court granted Plaintiff permission to file his Second Amended Complaint by

August 31, 2017. (Doc. 48). On September 15, 2017, Defendants notified the Court that Plaintiff's Second Amended Complaint had never been separately docketed and "request[ed] that the Court direct the Clerk to docket the exhibit to [P]laintiff's Notice . . . as the Second Amended Complaint." (Doc. 54). On September 19, 2017, the Court directed the Clerk to docket the Second Amended Complaint (Doc. 55) and that same day the Second Amended Complaint was docketed. The Second Amended Complaint contains allegations related to a strip search. (2AC ¶ 23). Plaintiff subsequently filed a Third Amended Complaint on June 13, 2018, which contained allegations related to a strip search (Doc. 74 at 3-4) and a Fourth Amended Complaint on August 30, 2018, which also contained allegations related to a strip search (4AC at 3-4 ¶ 5).[5]

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). The task is material issue spotting

---

[5] The Fourth Amended Complaint is erroneously identified on the docket as the Third Amended Complaint.

not material issue determining. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim.").

Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. Simply put, the movant must establish that the law favors the judgment sought.

### ANALYSIS

Plaintiff's claims, asserted pursuant to 42 U.S.C. § 1983, allege violations of his Fourth Amendment rights for false arrest/false imprisonment, malicious prosecution, warrantless entry into residence, warrantless search of residence, and suspicionless strip search and visual body cavity inspection incident to arrest. These claims, except for the warrantless entry claim, will be analyzed *seriatim*.

### I. False Arrest

Plaintiff brings a claim for false arrest related to the September 6 Arrest. (4AC at 4 ¶ 1). Plaintiff's § 1983 claim for false arrest "is substantially the same as a claim for false arrest under New York law." *Bonadies v. Town of Amenia*, No. 19-CV-10890, 2020 WL 5209510, at *10 (S.D.N.Y. Aug. 31, 2020) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, to "make a claim of false arrest, a plaintiff must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *DeJesus v. City of N.Y.*, 55 F. Supp. 3d 520, 523 (S.D.N.Y. 2014) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (quoting *Bernard*, 25 F.3d at 102) (internal citations and

quotation marks omitted). Defendant argues that there was probable cause to arrest Plaintiff, and thus Plaintiff's false arrest claim must fail. (Def. Br. at 7-11). The Court agrees.[6]

Plaintiff was arrested for criminal possession of stolen property in the third degree in violation of § 165.50 of the New York Penal Law. (56.1 Stmt. ¶ 11). "A person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds three thousand dollars." N.Y. Penal Law § 165.50. Thus, Kolek must have had probable cause to believe that (1) Plaintiff knowingly possessed stolen property with the intent to benefit himself and (2) that the stolen property exceeded $3,000 in value. The Court finds that there is no genuine issue of material fact regarding whether there was probable cause to effectuate the arrest of Plaintiff pursuant to § 165.50 on September 6, 2014.

"Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Boyd v. City of New York*, 336 F.3d 72, 75–76 (2d Cir. 2003) (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts" and cannot be "reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002)); *see also Florida v. Harris*, 568 U.S. 237, 243 (2013) ("The test for probable cause is not reducible to 'precise definition or quantification.'" (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003))). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the

---

[6] Judge Karas in his earlier decision found that Plaintiff's false arrest/false imprisonment claims against the already-dismissed Defendants were time barred. (Op. & Order at 17).

evidence . . . have no place in the [probable-cause] decision." *Harris*, 568 U.S. at 243–44 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983) (alterations in original)). Thus, the Supreme Court has established that all that is required to satisfy the "flexible, common-sense standard of probable cause . . . is the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Harris*, 568 U.S. at 240, 244 (internal citations and quotations omitted, alterations in original).

When determining whether Kolek had probable cause the Court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (citing *Panetta*, 460 F.3d at 395). A court examines the evidence available to the arresting officer, considers its probable value, and then looks to the totality of the circumstances to evaluate whether there was probable cause to arrest. *Id*. Information gleaned by a law enforcement official from the victim of a crime can establish the existence of probable cause so long as the circumstances do not "raise doubt as to the [victim's] veracity." *Id.* (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). "The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Id*. at 395-96 (internal quotations and citations omitted).

The Court finds that there was probable cause to believe that Plaintiff knowingly possessed stolen property with the intent to benefit himself. "A defendant's knowledge that property in his possession was stolen may be shown by his or her recent and exclusive possession of the property following its theft, by his or her conduct, or by his or her contradictory statements." *People v. Derrell*, 6 A.D.3d 625, 626 (N.Y. App. Div. 2004). The El Tequilero theft occurred on July 12, 2014. (56.1 Stmt. ¶ 3). According to a receipt recovered from the Pawnshop, dated just six days

later on July 18, 2014, Plaintiff sold a Behringer Mixed DJ Equipment Workstation to the Pawnshop. (*Id.* ¶ 9). Rendon and Perez identified the Behringer Mixed DJ Equipment Workstation as the DJ Workstation stolen during the July 12 Burglary. (*Id.* ¶ 10). Additionally, on August 21, 2014, approximately six weeks after the El Tequilero theft, Plaintiff sold a JBL PRX 625 speaker and an Elite LS801 woofer to the Pawnshop. (*Id.* ¶ 9). Rendon and Perez identified the Elite LS801P woofer as one of the Elite Speakers stolen during the July 12 Burglary (*Id.* ¶ 10). While the JBL PRX 625 speaker had already been resold by the Pawnshop, and thus could not be identified by Rendon and Perez as the JBL Speaker stolen on July 12, 2014, Kolek concluded that it likely was the same speaker reported stolen because it had been sold by Plaintiff to the Pawnshop at the same time that the identified Elite Speaker was sold to the Pawnshop. (*Id.* ¶ 12).

Armed with this information, Kolek had probable cause to believe that Plaintiff knowingly possessed stolen property with the intent to benefit himself. Plaintiff's conduct—specifically the sale of the items to a pawnshop soon after the items were reported stolen—establishes probable cause that Plaintiff knowingly was in possession of stolen property. *See People v. Culbero*, 869 N.Y.S.2d 78, 79 (N.Y. App. Div. 2008) ("There was probable cause for defendant's arrest, based on information that an individual with defendant's unusual name had pawned stolen property."); *see also Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) (finding that state trooper "was entitled to rely on the implications of the information known to him in assessing whether [defendant] possessed . . . knowledge" that property was stolen).

Furthermore, Kolek had no reason to doubt the veracity of Rendon and Perez who stated, under penalty of perjury, that the items recovered from the Pawnshop were the same items stolen during the July 12 Burglary. (Incident Report at 32-33); *see also Stansbury*, 721 F.3d at 91 (finding that officer "had no reason to doubt the honesty of [witnesses], each of whom made statements

under penalty of perjury"). Thus, there was probable cause to believe that Plaintiff knowingly possessed stolen property with the intent to benefit himself.

There was also probable cause to believe that the stolen property was over $3,000 in value. In New York, "value means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." N.Y. Penal Law § 155.20. Here, the record reveals that Kolek relied on Perez's statement to police regarding the purchase price of the stolen property to determine its value. Perez reported to police that the Elite Speaker was purchased for $1,300, the JBL Speaker was purchased for $1,200, and the value of the DJ Workstation was estimated at $1,000. (56.1 Stmt. ¶ 12). Perez estimated that he had purchased the audio equipment two years prior to the July 12 Burglary. (Incident Report at 58). Therefore, according to Kolek, he "believed that the combined replacement value of all three pieces of equipment was in excess of $3,000." (Kolek Decl. ¶ 13). Kolek did not determine the value of the stolen equipment based on the price it was sold to the Pawnshop because "[i]n [Kolek's] experience, the price the pawnshop paid to plaintiff for the items did not fairly reflect their market value or replacement value because pawnshops purchase property for substantially less than its actual value." (*Id.*).

Plaintiff's Rule 56.1 opposition statement does not present any evidence establishing that Kolek's estimation of the value of the stolen goods was inaccurate or that the stolen goods should be valued differently. (*See* 56.1 Opp'n ¶ 11 (providing that there are "material facts [that] are in genuine dispute for resolution at trial" but failing to cite to any evidence)). Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York provides that facts asserted in a party's Rule 56.1 statement "will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the [56.1 opposition]

statement" that is "followed by citation to evidence which would be admissible." Plaintiff's mere assertion that there are facts in dispute without any reference to evidence in support of such a position—*i.e.* evidence establishing that Kolek's valuation was inaccurate—is insufficient to create a genuine factual dispute for resolution at trial regarding the value of the stolen goods.

In any event, Kolek's reliance on Perez's estimated purchase price and his own personal experience with the valuation of items sold to pawnshops establishes that there was probable cause to believe the items stolen in the July 12 Burglary and sold to the Pawnshop were over $3,000 in value. *See People v. Sloan*, 552 N.Y.S.2d 579, 579–80 (N.Y. App. Div. 1990) (finding that the victim's statement that the "items stolen from the car were purchased for approximately $1,500 . . . was sufficient to support the jury's finding that the value of the property stolen exceeded the one thousand dollars threshold . . . ."). Importantly, "[p]robable cause . . . demands much less certainty than that required for a criminal conviction." *Candelario v. City of N.Y.*, No. 12-CV-1206, 2013 WL 1339102, at *5 (S.D.N.Y. Apr. 3, 2013), *aff'd*, 539 F. App'x 17 (2d Cir. 2013) (internal citations omitted). After considering the "facts available to [Kolek] at the time of the arrest" and "the totality of the circumstances," *Stansbury*, 721 F.3d at 89, the Court finds that Kolek had probable cause to believe the stolen property was over $3,000 in value.[7]

Thus, Kolek had probable cause to arrest Plaintiff for criminal possession of stolen property in the third degree in violation of § 165.50 of the New York Penal Law. Because the "existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false

---

[7] In New York, criminal possession of stolen property in the fourth degree under N.Y. Penal Law § 165.45(1), a class E felony, requires that the stolen goods exceed $1,000 in value. Accordingly, even if the Court had concluded that there was a genuine factual dispute regarding whether there was probable cause to believe the stolen goods were over $3,000 in value, the Court would find probable cause to believe the value of the stolen goods exceeded the lower threshold of New York Penal Law § 165.45(1).

arrest,'"*Weyant*, 101 F.3d at 852 (quoting *Bernard*, 25 F.3d at 102), Kolek is granted summary

judgment on Plaintiff's false arrest claim for relief.[8]

Even assuming *arguendo* that the Court found no probable cause to arrest Plaintiff for

criminal possession of stolen property in the third degree, the Court nonetheless finds that Kolek

was protected by qualified immunity as to Plaintiff's false arrest claim. In the absence of probable

cause, an arresting officer is still entitled to qualified immunity if he can establish that there was

"arguable probable cause" to arrest. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable

probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that

probable cause existed, or (b) officers of reasonable competence could disagree on whether the

probable cause test was met.'" *Id*. (quoting *Golino*, 950 F.2d at 870). "Thus, the analytically

distinct test for qualified immunity is more favorable to the officers than the one for probable

cause[, and] 'arguable probable cause' will suffice to confer qualified immunity for the arrest." *Id*.

The Second Circuit has held that an officer is protected by qualified immunity, and

summary judgment on a false arrest claim is appropriate, if "a rational jury could *not* find that the

officers' judgment was so flawed that no reasonable officer would have made a similar choice."

*Rine v. Giardina*, 199 F.3d 1323 (2d Cir. 1999) (quoting *Lennon v. Miller*, 66 F.3d 416, 424-25

(2d Cir. 1995) (emphasis in original). Here, Kolek's belief that probable cause to arrest Plaintiff

for criminal possession of stolen goods in the third degree existed was not so flawed, and, at the

very least, reasonable officers could have disagreed whether probable cause existed. Therefore,

even assuming the Court concluded that Kolek did not have probable cause, the Court finds that

---

[8] To the extent Plaintiff intended to assert a separate claim for relief for false imprisonment "false arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); *see also Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011) (explaining that, under New York law, claims for false arrest and false imprisonment are "identical"). Accordingly, the Court grants Kolek summary judgment on Plaintiff's false imprisonment claim for the same reasons stated herein regarding Plaintiff's false arrest claim.

Kolek had arguable probable cause to effectuate an arrest. Thus, Kolek, for purposes of this claim for relief, is entitled to qualified immunity.

## II.  Malicious Prosecution

Plaintiff also asserts a malicious prosecution claim related to the September 6 Arrest. (4AC at 4 ¶ 1). "To prevail on a malicious prosecution claim under Section 1983, a plaintiff must establish the elements of malicious prosecution under New York state law." *Johnson v. City of N.Y.*, No. 18-CV-6256, 2020 WL 2732068, at *5 (S.D.N.Y. May 26, 2020) (citing *Manganiello v. City of N.Y.*, 612 F.3d 149, 160-61 (2d Cir. 2010)). A malicious prosecution claim under New York law, requires a plaintiff to prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (quoting *Manganiello*, 612 F.3d at 161). Defendant argues that there is no factual dispute regarding the second or third factor—that is, the proceeding did not terminate in Plaintiff's favor and there was probable cause to commence the proceeding. (Def. Br. at 11-15).

The Court finds that the proceeding did not terminate in Plaintiff's favor and thus his malicious prosecution claim is foreclosed.[9] Plaintiff's criminal prosecution was dismissed on July 14, 2016 based on an adjournment in contemplation of dismissal ("ACD"), pursuant to N.Y. C.P.L. § 170.55, that had been entered into on January 14, 2016. (56.1 Stmt. ¶ 23 (citing Schulman Decl. Ex. D at 53)). "It is well-established that, under New York law, ACDs do not constitute favorable terminations for purposes of a malicious prosecution claim." (Op. & Order at 17); *see also e.g.*, *Singleton v. City of N.Y.*, 632 F.2d 185, 193 (2d Cir. 1980) ("The district court reasoned that an 'adjournment in contemplation of dismissal' . . . did not constitute a termination in favor of

---

[9] Judge Karas found that Plaintiff's malicious prosecution claim against the already-dismissed Defendants failed on the merits. (Op. & Order at 19).

appellant. Despite appellant's protestations to the contrary, the district court's conclusion is correct and adequately supported."); *Riccio v. New York*, 859 F. Supp. 2d 480, 487 (E.D.N.Y. 2012) ("An adjournment in contemplation of dismissal ("ACD") does not qualify as a favorable termination."); *Brown v. City of N.Y.*, No. 98-CV-5354, 2001 WL 477279, at *3 (E.D.N.Y. Feb. 15, 2001) (dismissing malicious prosecution claims because Plaintiff "entered into a valid ACD").

Plaintiff argues that the documents submitted by Defendant indicating that Plaintiff's charges were terminated by an ACD are "doctored" and "should not be taken [at] face value as authentic document[s] or official court documents because (1) the dates and signatures on the bottom of these two exhibits don't match, and; (2) an ACD is a plea agreement, meaning, official court records/transcripts must show evidence than a Defendant agreed to an ACD." (Pl. Opp'n at 18-19). Furthermore, Plaintiff argues, the ACDs were made "outside of Plaintiff's presence" because "Plaintiff never appeared at the Town of Wallkill Court to agree to an ACD." (*Id.*). Finally, Plaintiff argues that the words "no evidence" appear on one of the documents demonstrating that there was no evidence to justify Plaintiff's September 6 Arrest. (*Id.* at 19). The Court finds no merit in Plaintiff's arguments.

First, Plaintiff offers no evidence in support of his assertion that the exhibits filed by Defendant are "doctored." In opposition to the portion of Defendant's Rule 56.1 statement which asserts that Plaintiff's charges were resolved via ACD, Plaintiff states that "material facts are in genuine dispute for resolution at trial." (56.1 Opp'n ¶ 23). However, Plaintiff does not cite to any evidence in support of this assertion. Plaintiff has not complied with the mandates of Local Rule 56.1 because he has not submitted or identified any evidence that demonstrates Defendant's factual assertions are inaccurate. Additionally, Plaintiff's argument that the ACD submitted by Defendant is "doctored" is wholly self-serving and conclusory. Plaintiff does not deny that he received an

ACD and that his case was dismissed. "[A] nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Walker v. Carter*, 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016) (quoting *JF v. Carmel Cent. Sch. Dist.*, 168 F.Supp.3d 609, 616 (S.D.N.Y. 2016)); *see also New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 326 (S.D.N.Y. 2015) ("[U]nsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment."). The Court finds there is no genuine dispute of material fact regarding whether Plaintiff entered into a valid ACD.

Plaintiff's other arguments were already addressed in the Court's May 7 Order. Regarding Plaintiff's argument that the ACD was signed outside of his presence because Plaintiff never appeared at the Town of Wallkill Court to agree to an ACD, this Court previously found that:

> Plaintiff does not allege that that [sic] the ACD was in fact entered into against his wishes; he merely alleges that he was not made aware of court dates. Yet, under New York law, "[n]o motion procedure or hearing is required and no reasons need be stated for an ACD." N.Y. Crim. Proc. Law § 170.55. Further, even construing Plaintiff's argument to be that counsel agreed to an ACD without his consent, it is Plaintiff who bears the burden of proving favorable termination, and this argument does not demonstrate as much.

(Op. & Order at 18). Plaintiff's argument has not changed, and Plaintiff has failed to carry his burden of establishing that the proceeding against him resulted in a favorable termination. As explained *supra*, an ACD is not considered a favorable termination when analyzing the viability of a malicious prosecution claim.

Regarding Plaintiff's reference to the "no evidence" notation on one of the documents submitted by Defendant in support of his motion (*see* Schulman Decl. Ex. E), the May 7 Order stated:

> Plaintiff . . . refers to the fact that, on one copy of the typewritten ACD report (generated July 19, 2016), the handwritten phrase "no evidence" appears alongside other handwritten notes. Defendants argue that this "cryptic notation . . . does not alter the ACD disposition or its legal effect." Defendants are correct. "[I]t is only

> when the *final disposition* is such as to indicate innocence that this burden [of
> favorable termination] is met." Thus, the handwriting on the final disposition
> report—whoever it was written by and whatever it indicates—cannot convert the
> ACD itself into a favorable termination for purposes of a malicious prosecution
> claim.

(Op. & Order at 18-19) (internal citations omitted). Again, nothing in Plaintiff's argument has changed. Because the record establishes that Plaintiff's proceeding did not end in a favorable termination, Plaintiff cannot establish the elements for a malicious prosecution claim.

Defendant also argues that there was probable cause to commence a proceeding against Plaintiff. As in the false arrest context, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury*, 721 F.3d at 94–95 (quoting *Manganiello*, 612 F.3d at 161–62). The Second Circuit has established that "the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases" because in the malicious prosecution context the "facts and circumstances" must be such that "a reasonably prudent person [would] believe the plaintiff guilty." *Id.* (citing *Boyd*, 336 F.3d at 76). For the reasons discussed *supra* the undisputed facts establish that the information available to Kolek satisfy this standard.

Accordingly, Plaintiff cannot satisfy the second or third element of a malicious prosecution claim and summary judgment on that claim is appropriate.

## III.  Illegal Search and Seizure

Plaintiff's Fourth Amended Complaint encompasses three distinct illegal search and seizure claims: a claim premised on (1) a warrantless entry into Plaintiff's residence on September 6, 2014 (4AC at 3 ¶ 2), (2) a warrantless search of Plaintiff's residence on September 6, 2014 (*id.* at 4 ¶ 1), and (3) a suspicionless strip search and visual body cavity inspection incident to arrest (*id.* at 3-4 ¶ 5). Defendant only moves for summary judgment on the latter two theories.

### a. Search of Plaintiff's Residence

Defendant argues that the Court should grant summary judgment on Plaintiff's claim alleging an unconstitutional search of his residence on September 6, 2014. While Plaintiff's Fourth Amended Complaint asserts that Defendant entered his residence without his consent and without a warrant, Plaintiff's Complaint does not assert that his residence was searched on September 6, 2014. Plaintiff alleges only that when Plaintiff went to his bedroom "to get properly dressed, Defendant Kolek shadowed Plaintiff from the living room to the bedroom and back to the living room where [Plaintiff] was handcuffed." (4AC at 3 ¶ 4; *see also* 2AC ¶ 16 (alleging that Defendants "entered the home of the plaintiff and waited in the living room while plaintiff called his wife")). While the Court has a duty to interpret the pleadings of a *pro se* plaintiff liberally "to raise the strongest arguments that they suggest," *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), the Court "cannot invent factual allegations that [the plaintiff] has not pled," *Chavis v. Cappius*, 618 F.3d 162, 170 (2d Cir. 2010). A review of Plaintiff's Complaint reveals that Plaintiff did not assert a Fourth Amendment violation claim related to an alleged search of his residence during the September 6 Arrest, and, during Plaintiff's deposition he did not testify that any such search occurred. Thus, the Court finds that there is no genuine dispute whether a search of Plaintiff's residence occurred during the September 6 Arrest[10] and grants Defendant summary judgment on Plaintiff's claim alleging same.[11]

---

[10] Judge Karas in his earlier decision found that Plaintiff's false arrest/false imprisonment claims against the already-dismissed Defendants were time barred. (Op. & Order at 17).

[11] Because the Court finds that Defendant should be granted summary judgment on Plaintiff's malicious prosecution and warrantless search of residence claims for relief for the reasons stated herein, the Court need not address Defendant's additional argument that he is entitled to qualified immunity on these claims. (*See* Def. Br. at 16-17).

**b. Strip Search and Visual Body Cavity Inspection**

There is a genuine factual dispute as to whether a strip search and visual body cavity inspection occurred at the Middletown State Police Barracks incident to Plaintiff's arrest. Plaintiff alleges that after being informed that he was being charged with criminal possession of stolen property in the third degree, a felony, Plaintiff was "strip searched without probable cause." (4AC at 3-5 ¶ 5). Plaintiff testified during his deposition that the strip search included a visual body cavity search. (Pl. Dep. at 56:21-57:12).  For his part, Defendant states in his Rule 56.1 statement of undisputed facts that "Plaintiff claims that  . . . Kolek directed two officers in conducting what can be described as a strip search of plaintiff with a visual body cavity inspection. Plaintiff was ordered to remove his clothing, which was inspected by the officers, and asked to spread his buttocks, but was not touched by NYSP." (56.1 Stmt. ¶ 17). Defendant adds in a footnote that "Kolek denies that a strip search or visual body cavity search was conducted" but that Kolek "assumes (without conceding) the truth of plaintiff's version for the purpose of [the motion for summary judgment]." (*Id*. ¶ 17 n.3 (citing Kolek Decl. ¶ 19 ("I understand that Plaintiff alleges that I conducted or participated in conducting a strip search of him, including a visual body cavity search, at the Police Barracks. This allegation is false. I never participated in, ordered, or was otherwise connected with any strip search and/or body cavity search, nor do I have any knowledge that any such search occurred.")); *see also* Def. Br. at 21 (arguing that for "the purposes of this motion only, defendant assumes that plaintiff's version is true and that he undressed and was strip searched with a visual body cavity inspection.")). Regarding Paragraph 17 of Defendant's Rule 56.1 statement, Plaintiff claims in his opposition statement that he "denies [the] statement because material facts are in genuine dispute for resolution at trial." (56.1 Opp'n ¶ 17). Clearly, a factual dispute exists as to whether the strip search and visual body cavity inspection occurred at all.

Brushing aside the evidence of a factual dispute, and the inappropriate assumption Defendant suggests the Court make, Defendant then argues that the Court should dismiss Plaintiff's strip search claim because (1) it is time-barred (even though Defendant did not assert this affirmative defense in his Answer) and (2) Defendant is shielded by qualified immunity. (Def. Br. at 17-23). With this argument, Defendant turns summary judgment motion practice on its head. The Court's mission at the summary judgment stage is to resolve all ambiguities and draw all reasonable inferences in the non-movant's favor and then determine if there are genuine disputes as to any material facts and whether the movant is entitled to judgment as a matter of law. Here, there is clearly a genuine dispute as to a material fact, as the parties disagree over whether a strip search and visual body cavity inspection in fact occurred. The Court declines Defendant's invitation to assume the veracity of disputed facts and accept Plaintiff's version of events for the purposes of adjudicating Defendant's summary judgment motion.

In any event, regarding Defendant's unpled statute of limitations affirmative defense, the Court deems Defendant's Answer amended *nunc pro tunc* to add a statute of limitations affirmative defense. (Doc. 44 ¶¶ 15-21). With the defense properly before the Court, the Court finds Plaintiff's strip search claim is not time-barred. The events giving rise to Plaintiff's dispute occurred on September 6, 2014. The statute of limitations applicable to claims brought under § 1983 in New York is three years. *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). Thus, Plaintiff must have asserted his strip search claim prior to September 6, 2017. On August 8, 2017, prior to the expiration of the limitations period, Defendant notified the Court that they received a "notice" from Plaintiff, dated August 1, 2017, "containing a proposed Second Amended Complaint." (Doc. 45 at 1). Defendant noted that in Plaintiff's proposed Second Amended Complaint, he "claims that he was strip searched by two of the officers when he was brought to

the State Police barracks." (*Id.*). On August 14, 2017, Plaintiff's "notice" and proposed Second Amended Complaint was docketed on ECF. (Doc. 47; Doc. 47-1). On August 16, 2017, the Court granted Plaintiff's request to file his Second Amended Complaint. (Doc. 48). Plaintiff's Second Amended Complaint was not actually docketed on ECF as a separate docket entry until after the Court directed the Clerk of the Court to docket the Second Amended Complaint on September 19, 2017. (Doc. 55; Doc. 56).

Defendant argues that Plaintiff's strip search claim was thus untimely because Plaintiff's Second Amended Complaint, the first Complaint in which Plaintiff included factual allegations related to a strip search, was not docketed on ECF until September 19, 2017, after the expiration of the statutory period. (Def. Br. at 17). Defendant's argument is in contravention of established Second Circuit case law.

Where, as here, "a plaintiff moves for leave to amend to add claims within the limitations period and attaches a proposed amended complaint to the motion, the claims are timely." *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017); *see also Nw. Nat. Ins. Co. of Milwaukee, Wis. v. Alberts*, 769 F. Supp. 498, 510 (S.D.N.Y. 1991) ("When a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes"); *Derdiarian v. Futterman Corp.*, 36 F.R.D. 192, 194 (S.D.N.Y. 1964) (plaintiff's filing of its motion to amend the complaint prior to the expiration of the statute of limitations "was commencement of the action . . . under Rule 3, Fed. R. Civ. P. . . ."). This is so because the date on which a plaintiff seeks the court's permission to add new claims is the date on which the defendant has notice that they may face new claims. *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, No. 00-CV-1898, 2007 WL 2979642, at *4 (S.D.N.Y. Oct. 10, 2007).

While Kolek acknowledges that, "[o]rdinarily, the date of filing of a motion for leave to amend with a proposed complaint attached is deemed the date of commencement of the action as to any new claims or defendants," Kolek argues that this rule should be excused here because "courts have indicated that the rule will not be followed if the plaintiff fails to comply with the Court's rules and orders." (Def. Br. at 18-19). Kolek asserts that Plaintiff failed to comply with the Court's August 16 Order directing Plaintiff to file his Second Amended Complaint by August 31, 2017. (Doc. 48). As an initial matter, it is not clear whether Plaintiff received a copy of the Court's August 16 Order as the August 16 Order does not include a direction to the Clerk of Court to mail a copy of the Order to Plaintiff, and no affidavit of service appears on the docket. In any event, "*pro se* litigants 'should not be impaired by harsh application of technical rules,' and therefore courts 'make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *E.E.O.C. v. Int'l Ass'n of Bridge Structural & Ornamemtal Ironworkers Local 580*, No. 71-CV-2877, 2008 WL 3884385, at *3 (S.D.N.Y. Aug. 20, 2008) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). The Court's chief concern is whether Defendant received notice of the claims asserted against him prior to the expiration of the statute of limitations period. Defendant did, and thus, the Court finds Plaintiff's strip search claim is not time barred.

As to Defendant's qualified immunity defense, the Court will not revise the summary judgment rules to test such a defense when faced with clearly disputed material facts regarding whether such a search in fact occurred. That branch of Defendant's motion is denied.

## CONCLUSION

The Court GRANTS Defendant's motion for summary judgment IN PART. Specifically, the Court grants Defendant summary judgment on Plaintiff's false arrest, malicious prosecution,

and unreasonable search and seizure claim related to the alleged search of Plaintiff's residence on September 6, 2014. The Court DENIES Defendant's motion concerning the alleged strip search and visual body cavity inspection. Plaintiff's remaining claims related to the alleged warrantless entry into Plaintiff's residence on September 6, 2014 and the alleged strip search and visual cavity body inspection will proceed to trial.

The Court shall hold a telephonic pretrial conference on December 17, 2020 at 11:00 a.m. At the time of the scheduled conference all parties shall call (888) 398-2342; access code: 3456831.

Defendant is directed to mail a copy of this Order to Plaintiff and provide proof of service on the docket. Additionally, it is the responsibility of counsel for Defendant to make prior arrangements with the appropriate facility to have the Plaintiff available via telephone for the December 17, 2020 conference.

The Court directs the Clerk to terminate the pending motion (Doc. 127).

**SO ORDERED:**

Dated:  New York, New York
        November 16, 2020

_____
Philip M. Halpern
United States District Judge